UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mandy Liles,                                        Case No. 14cv1522 (PAM/BRT)

                    Plaintiff,

v.                                                  **MEMORANDUM AND ORDER**

C.S. McCrossan, Inc., and
C.S. McCrossan Construction, Inc.,

                    Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment and

Motion to Exclude Expert Testimony.  For the reasons that follow, the Motion for Summary

Judgment is granted and the Motion to Exclude is denied as moot.

**BACKGROUND**

Plaintiff Mandy Liles was employed as an assistant project manager by Defendants

C.S. McCrossan, Inc. and C.S. McCrossan Construction, Inc. (collectively, "CSM") from

2004 until her termination in January 2012.  (Compl. ¶ 6.)  At the time of her termination,

Liles was assisting the Project Manager in overseeing construction of the Metro Transit light

rail green line from St. Paul to Minneapolis.  She contends that she experienced sexual

harassment on the job and that her termination was the result of retaliation and gender

discrimination in violation of both Title VII and the Minnesota Human Rights Act (MHRA).

Liles began her employment with CSM after she graduated from college.  As she

notes, construction is a male-dominated industry.  She contends that, even though she

consistently had good performance reviews, CSM ultimately grew tired of her "activism for women in the face of blatant sexual harassment and gender discrimination," and terminated her employment.  (Pl.'s Opp'n Mem. (Docket No. 74) at 3.)  Defendants argue that Liles could not do the job assigned to her and that she was fired for poor performance.

According to Liles, she first experienced sexual harassment in 2009, when a fellow employee named Tom Peterson, Jr., made inappropriate and vulgar remarks to her, both in person and via email, because she rebuffed his romantic advances.  (Liles Dep. at 60-62 & Ex. 13.)  Liles reported the issue to CSM's human resources department, which reprimanded Peterson.  (Id. at 63; McCrossan Dep. at 35.)  Soon after this, in late 2009 and early 2010, Liles contends that Peterson's father, Tom Peterson, Sr., began a campaign of harassment, referring to her several times as "tuna fish" and saying she was "rotten."  (Liles Dep. at 75-76.)  Peterson, Sr., did not use these words in Liles's presence, although she once heard him refer to her as "tuna fish" over another employee's speaker phone.  (Id. at 75.)  Liles does not allege that she reported the issues with Mr. Peterson, Sr., to anyone at CSM.  (Id. at 80.)

At about the same time, in late 2009 or early 2010, Liles complained to CSM management that a female crane operator, Deb Petry, was not given the same training opportunities as men.  (Id. at 83-84.)  Liles contends that her requests were ignored until she brought them up to CSM's President, Tom McCrossan.  McCrossan saw to it that Petry was given the training she sought.  (Id. at 86.)

In early 2010, another assistant project manager at CSM, Kent Messenbrink, asked Liles about information in a project bid.  When Liles explained that a different employee was

responsible for the information, Messenbrink responded that he did not believe the other employee "would do something so stupid." (Id. at 91.) Liles reported what she believed was Messenbrink's disrepectful comments to Tom McCrossan, and Messenbrink apologized. (Id. at 91-92.) Liles believes the apology was not sincere. (Id. at 92.)

Liles started working on the light-rail project in approximately November 2010. (Id. at 101-02.) This project was a joint venture between CSM and Ames Construction, and was therefore staffed jointly by the two companies. Liles had a supervisor at CSM, Manny Walk, but Walk did not work at the joint venture's office until sometime in 2011. (Id. at 101-03.) Rather, Liles's direct supervisor on the light-rail project was Justin Gabrielson, an Ames employee. (Id.) Gabrielson was the project manager for the project; Liles was one of the assistant project managers.

Liles contends that Gabrielson used foul language, made inappropriate comments to her about her appearance, asked her whether she was going to cry, and showed her his bare midriff. (Id. at 34-35, 121-22, 138-41.) Liles asserts that she reported Gabrielson's inappropriate language and his baring of his stomach to Walk and to Mr. McCrossan. (Id. at 117, 121, 234.) McCrossan has no recollection of Liles ever complaining about anything other than that Gabrielson used foul language and was a very demanding boss. (McCrossan Dep. at 60-62.) Similarly, Walk only remembered Liles complaining about Gabrielson's language, and Walk testified that he spoke to Gabrielson about his use of inappropriate language. (Walk Dep. at 41-44.) Liles contends that CSM did nothing about Gabrielson's conduct, although she does not explain what CSM could have done about another company's

employee.  She also asserts that she was reprimanded for the same conduct for which male employees were not reprimanded.  (Liles Dep. at 189.)  She believes that there was a conspiracy in place to get rid of her by willfully understaffing the light-rail project, essentially setting her up to fail.

And, according to CSM, she did fail.  CSM's evidence shows that Liles struggled so mightily with her duties as assistant project manager that in April 2011 she was reassigned to work in the field, a position she had never held.  (Walk Dep. 60; see also Liles Dep. Ex. 23 (Mar. 12, 2011, email from Gabrielson to Walk stating that Liles was "overwhelmed by the complexity of the job"); but see Liles Dep. at 126 (Walk and Gabrielson did not tell her that her reassignment was a result of "a performance issue of any sort.").)  CSM viewed the job change not as a demotion, but as an opportunity for Liles to accumulate experience in an area in which Liles had requested more experience.  (Walk Dep. at 64; McCrossan Dep. at 66-67.) The joint venture did not replace Liles as assistant project manager, but reassigned her duties to other employees.  (McCrossan Dep. at 70.)  Liles was not successful in the new role, something she attributes to not getting enough support from her chauvinistic bosses.

In the fall of 2011, Walk placed Liles on a performance improvement plan, called a Corrective Action Plan, or CAP.  As part of this plan, Liles was asked to perform a series of tasks to determine her abilities to be a project manager.  Liles claims that the tasks were Herculean and were impossible to perform in the time period she was given.  (Liles Dep. at 189-91.)  As with most of her complaints, her story is corroborated by another CSM employee, Craig Anderson, who happens to be Liles's boyfriend.  Liles argues that the

performance plan was a pretext for unlawful discrimination.

According to CSM, Liles did not complete the CAP in a satisfactory manner, and in fact decided mid-way through the process that she did not want to complete the entire CAP. (Liles Dep. at 214-15.)  Liles again presents Anderson's opinion that Liles's performance on the CAP was "competent."  (Anderson Dep. at 28; 69-70.)   Nevertheless, CSM terminated Liles's employment on January 24, 2012.  CSM did not replace Liles, and she got a new job with Egan Companies less than a month after she was fired.

Liles filed a charge of discrimination with the Equal Employment Opportunity Commission on February 14, 2012. (Collins Aff. Ex. 10.)  The EEOC dismissed the charge and issued Liles a right-to-sue letter on February 13, 2014.  (Id. Ex. 11.)  She filed this lawsuit shortly thereafter.  Liles's Complaint contains only two counts: "Sex Harassment, Discrimination, Retaliation" under Title VII (Count I), and "Sexual Harassment, Discrimination, Reprisal" under the Minnesota Human Rights Act (Count II).  Because claims under the MHRA and Title VII are analyzed using the same legal standards, the Court will discuss the claims by type rather than statute.

**DISCUSSION**

CSM has moved for summary judgment on all of Liles's claims, and in addition seeks to exclude the testimony of her expert witness, Stan V. Smith, Ph.D.  Because no genuine issues of fact remain for resolution on Liles's claims, the Court will deny the motion to exclude as moot.

## A.      Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## B.      Statute of Limitations

CSM fist contends that Liles cannot rely for her discrimination or harassment claims on any conduct that occurred before February 14, 2011, one year before Liles filed the charge of discrimination with the EEOC.  As CSM notes, Liles specified the dates of the alleged discrimination or harassment in her EEOC charge—listing the "earliest date" of the alleged discrimination as January 1, 2011—and she did not mention or reference any alleged

continuing violation in that charge.

Title VII provides that a complainant must file a charge with the EEOC within 300 days of the allegedly discriminatory practice. 42 U.S.C. § 2000e-5(e)(3)(A). The MHRA's statute of limitations is one year. Minn. Stat. § 363A.28, subd. 3. Liles claims that she suffered discrimination on January 1, 2011. (Collins Aff. Ex. 10.) Thus, her charge was timely under both statutes' limitations periods. CSM argues that the Court must also limit Liles's evidence to those acts occurring within the limitations period—acts occurring after April 20, 2011, for Title VII claims and February 14, 2011, for MHRA claims—because Liles did not specify in her EEOC charge that she was claiming a continuing violation.

But the limitations period need not be strictly construed in this case. Even considering all of the acts of which Liles complains, she has failed to establish that she was the victim of sexual harassment, gender discrimination, or retaliation. CSM's Motion on this point is denied.

## C.   Liles's Claims

### 1.   Gender Discrimination

Liles's employment discrimination claims, whether under Title VII or the MHRA, are analyzed using the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007); see also Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 542 (Minn. 2001) (applying McDonnell Douglas analysis to MHRA claims). Under that analysis, a plaintiff with a discrimination claim bears the burden of establishing a prima facie case of

discrimination.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  Specifically, in this case Liles must establish that: (1) she is a member of a protected group, (2) she was meeting CSM's legitimate expectations, (3) she suffered an adverse employment action, and (4) CSM did not take similar actions against employees who were not members of the protected class.  <u>See Clark v. Runyon</u>, 218 F.3d 915, 918 (8th Cir. 2000).

If Liles establishes a prima facie case of discrimination, CSM must rebut that showing by presenting evidence of a legitimate, non-discriminatory reason for the adverse action. <u>Coffman v. Tracker Marine</u>, 141 F.3d 1241, 1245 (8th Cir. 1998).  If CSM can make this showing, Liles must then prove that the reasons offered by CSM are pretextual and that illegal discrimination was a "motivating reason" for CSM's actions.  <u>Id.</u>

For purposes of this Motion, CSM assumes that Liles can meet her prima facie case of discrimination.  CSM has proffered a legitimate, non-discriminatory reason for firing her: she could not perform the duties she was assigned.

Liles contends that her performance was acceptable and that the performance-improvement plan was a mere pretext for firing her because of her gender.  She points to a July 2011 performance review, which was generally positive, noting that this review happened only weeks before Walk decided to put her on the performance-improvement plan. She asks the Court to infer that the performance-improvement plan was a pretext for discrimination.

But Liles has no evidence, aside from her suppositions, that there was any discriminatory intent whatsoever.  At most, she has established that her supervisors were

challenging bosses and perhaps treated her harshly.  She has no evidence to establish that any of this treatment was on the basis of her gender—she offers only her own supposition that gender discrimination was behind the way she was treated.  Liles must come forward with evidence that could persuade a reasonable jury that discrimination on the basis of her gender was a motivating factor in her termination.  Her own beliefs and the opinions of her boyfriend do not constitute such evidence.  In the absence of any evidence of gender-based animus, rather than merely demanding supervisors, and summary judgment is appropriate on her discrimination claim.

### 2.    Harassment

Title VII's prohibition on gender discrimination in employment includes a prohibition on "requiring people to work in a discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  A workplace is hostile under Title VII when it is "permeated with 'discriminatory intimidation, ridicule, and insult.'"  Id. (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).  In other words, a Title VII plaintiff must establish that the harassment she alleges was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  Vinson, 477 U.S. at 67.  "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."  Harris, 510 U.S. at 23.  Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id.

Even if all of the incidents of which Liles complains are within the statutory limitations period (and the Peterson, Jr. and Sr. incidents are certainly outside that period), she has utterly failed to come forward with evidence that her workplace was so "permeated" with sexual harassment that it "alter[ed] the conditions of [her] employment." Vinson, 477 U.S. at 57, 67. The stray incidents to which she points do not suffice to create an atmosphere that a reasonable person would fine hostile or abusive. See Harris, 501 U.S. at 21. Liles has not established that genuine issues of fact exist on her harassment claims.

Nor has she established that the alleged harassment she experienced was on the basis of her gender. Witnesses repeatedly testified that the individuals responsible for the alleged harassment were difficult individuals to work with. For example, after the incident with Tom Peterson, Jr., Tom McCrossan told Liles that Mr. Peterson, Jr., has been aggressive with him as well, and Liles testified that she heard that he was aggressive with at least two other employees who were male. (Liles Dep. at 63-65.) Workplace harassment is a serious matter, but it is legally actionable only if it occurs because of an individual's gender, race, or other prohibited characteristic. There is no evidence that the conduct of which Liles complains, to the extent it even rises to the level of harassment, was directed at her because she was a woman.

As with her discrimination claims, Liles has failed to come forward with sufficient evidence to show that there are genuine issues of fact remaining for trial on her harassment claims.

### 3.      Retaliation/Reprisal

Both Title VII and the MHRA make it unlawful for an employer to retaliate against an employee for exercising her rights under those statutes. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed a practice made an unlawful employment practice by [Title VII]"); Minn. Stat. § 363A.15 (making it unlawful to "intentionally engage in any reprisal against any person because that person: (1) opposed a practice forbidden under [the MHRA] or filed a charge . . . ."). To establish a prima facie case of retaliation/reprisal under either Title VII or the MHRA, Liles must demonstrate (1) that she engaged in a statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the adverse employment action and the protected activity. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (1997) (Title VII); Hoover v Norwest Private Mortgage Banking, 632 N.W.2d 534, 548 (Minn. 2001) (MHRA). If Liles can establish a prima facie case, the Court should apply the same burden-shifting analysis from McDonnell Douglas discussed above with reference to her discrimination claims. See Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998).

Liles contends that she engaged in protected conduct by reporting Gabrielson's actions to Walk and to Mr. McCrossan, and by complaining about the lack of training given the female crane operator. Her complaints regarding training for the crane operator are not cognizable because they occurred well outside the statute of limitations and are, in any case, too far removed from her termination to evince any causal connection between the two

events.

Similarly, she cannot establish any causal connection between her complaints about Gabrielson and her termination. She admits that Gabrielson's inappropriate remarks stopped after he returned from his honeymoon. The undisputed evidence is that Gabrielson's wedding was in early 2011. Her complaints regarding his conduct therefore occurred either before or shortly after this date. She was not put on the performance-improvement plan until the November 2011, too long after her complaints to allow for an inference of retaliation. See Sisk v. Picture People, Inc., 669 F.3d 896, 901 (8th Cir. 2012) ("More than two months is too long to support a finding of causation without something more."); Muafong v. Minn. Masonic Home, No. A06-899, 2007 WL 2034280 at * 4 (Minn. Ct. App. July 17, 2007) (noting that a "two-month interval between the protected activity and termination 'so dilutes any inference of causation'" to destroy any causal link) (internal citation omitted). Without any other evidence to establish that Liles's termination was a result of her complaints about Gabrielson, the 10-month lag between those complaints and her termination supports the opposite conclusion: that there was no connection between Liles's complaints and her termination. Liles's retaliation/reprisal claims fail.

**CONCLUSION**

Liles has not come forward with evidence to rebut CSM's contentions that no genuine issues of material fact remain on her claims.  Accordingly, **IT IS HEREBY ORDERED that**:

1.      Defendants' Motion for Summary Judgment (Docket No. 55) is **GRANTED**;

2.      Defendants' Motion to Exclude Expert Testimony (Docket No. 64) is **DENIED as moot**; and

3.      The Complaint (Docket No. 1) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>November 9, 2015</u>

<u>s/ Paul A. Magnuson</u>
Paul A. Magnuson
United States District Court Judge